COTTON STATES INSURANCE COMPANY OF ATLANTA, GEORGIA, a corporation, Plaintiff,

v.

DIAMOND HOUSING MOBILE HOMES, a corporation, et al., Defendants.

Civ. A. No. 75–G–1839–NE.

United States District Court,
N. D. Alabama,
Northeastern Division.

March 31, 1977.

---

John C. Eyster, Eyster, Eyster & Key, Decatur, Ala., for plaintiff.

Robert L. Milam, Milam & Hardwick, Decatur, Ala., for Diamond Housing Mobile Homes and Mobil Mart, Inc.

Ralph W. Hornsby and C. Lynwood Smith, Jr., Hornsby, Blankenship, Higgs & Smith, Huntsville, Ala., for Eddie Hill and Brenda Hill.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GUIN, District Judge.

This is a civil action seeking a declaratory judgment declaring the rights, obligations and limitations of the parties hereto in rela-

tion to each other and "all such other and different relief as to which it may be entitled under the pleadings and proof," basing the jurisdiction of this court upon the Constitution and Acts of Congress conferring jurisdiction upon the federal courts of actions involving diversity of citizenship. The gravamen of the complaint concerns the construction by this court of the completed operations and products liability portion in coverage thereunder of a policy of liability insurance issued to Mobil Mart, Inc., formerly doing business as Diamond Housing Mobile Homes, by Cotton States Insurance Company of Atlanta, Georgia, and referred to more specifically as Policy No. L–6390. The necessity for construction of the above referenced insurance policy arose when fire damage occurred to a Champion Mobile Home on December 22, 1974, said mobile home being owned by Eddie Hill and Brenda Hill and purchased from Mobil Mart, Inc., the insured. As a result of the fire damage to their mobile home, Eddie Hill and Brenda Hill filed suit on April 11, 1975, against the defendant Mobil Mart, Inc., formerly doing business as Diamond Housing Mobile Homes, Inc., in the Circuit Court of Madison County, Alabama (Civil Action No. 75–4–440), alleging that the defendant Diamond Housing Mobile Homes, Inc., was liable to defendants Eddie Hill and Brenda Hill for damages to their mobile home caused by the malfunction of a defective furnace. Plaintiff seeks a determination by this court that it is under no obligation to defend defendant Mobil Mart, Inc., under the policy of insurance in question, and that plaintiff is under no obligation to pay any judgment or indemnify the defendant Mobil Mart, Inc., under the aforesaid policy of insurance, resulting from the suit of the defendants Eddie Hill and Brenda Hill.

By order of this court dated October 8, 1975, the above referenced lawsuit which had been filed in the Circuit Court of Madison County, Alabama, and transferred to the Circuit Court of Limestone County, Alabama (Civil Action No. 6575J), was restrained and enjoined pending a determination of the rights and liabilities of the plaintiff and defendants with reference to the policy of insurance in question in the present case. On October 26, 1976, the plaintiff filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure based upon the pleadings heretofore filed in this case, the insurance policy GLA–20430 issued by Cotton States Insurance Company of Atlanta to Mobil Mart, Inc., covering the period April 1, 1974, to April 1, 1975, and the stipulation of facts as approved by the parties and set forth in the court's pretrial order dated October 14, 1976. The court has had the benefit of extensive briefs and oral argument concerning each of the issues presented by this case.

The court, having fully considered the pleadings, all of the testimony, exhibits, and other evidence adduced in the course of this case, and having carefully reviewed the briefs, and having heard the oral arguments of counsel, and having reviewed and studied the stipulations of facts as approved by the parties and set forth in the court's pretrial order dated October 14, 1976, upon which the court is to base its conclusions of law, now makes and finds the following conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure:

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the subject matter of this lawsuit and jurisdiction over the parties thereto, basing said jurisdiction upon the Constitution and Acts of Congress conferring jurisdiction upon the federal courts in actions involving diversity of citizenship.

2. The law in Alabama is clear that insurance companies have the right, in the absence of statutory provisions to the contrary, to limit their liability and write policies with narrow coverage; the insured has the option to purchase the policy or look elsewhere. *Aetna Insurance Co. v. Pete Wilson Roofing & Heating Co., Inc.,* 289 Ala. 719, 272 So.2d 232 (1972); *Mooradian v. Canal Insurance Co.,* 272 Ala. 373, 130 So.2d 915 (1961).

**506**

■ 3. Courts must enforce insurance contracts as written and cannot defeat express provisions in the policy, including exclusions, by judicial interpretation. *Aetna Insurance Co. v. Pete Wilson Roofing & Heating Co., Inc., supra.*

■ 4. An insurer, therefore, may, with the insured's acceptance, insert as many exclusion clauses in its liability policy as it deems proper and necessary as long as they do not conflict with public policy or the statutory laws of the state. *Biebel Brothers, Inc. v. United States Fidelity & Guaranty Co.,* 522 F.2d 1207 (8th Cir. 1975); *Alabama Farm Bureau of Mutual Casualty Insurance Co. v. Goodman,* 279 Ala. 538, 188 So.2d 268 (1966).

■ 5. An exclusionary provision must be read in light of the entire policy and the rule which requires ambiguous insurance contracts to be construed in favor of the insured does not sanction a perversion of the policy's language. *Pittsburg Bridge and Ironworks v. Liberty Mutual Insurance Co.,* 444 F.2d 1286 (3rd Cir. 1971). However, in interpreting a liability policy, the court must view the policy as a whole and determine the intention of the parties from the terms of the policy as they were reasonably understood by the insured. *Travelers Insurance Co. v. Highlands Insurance Co.,* 546 F.2d 1147 (5th Cir. 1977); *Ranger Insurance Co. v. Culberson,* 454 F.2d 857 (5th Cir. 1971).

6. The court finds that at all times relevant to this cause of action defendant Mobil Mart, Inc., was an insured of plaintiff Cotton States Insurance Company of Atlanta, Georgia, under a comprehensive general liability policy in which the insurer promised to:

"pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (a) bodily injury or (b) property damage to which this insurance applies, caused by an occurrence, if the bodily injury or property damage is included within the completed operations hazard or the product hazard, and the Company shall have the right and duty to defend any suit

against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, . . . ."

The insurance policy included "completed operations and products liability insurance" in coverage parts number L–6390, for which the insured paid an additional premium. The policy defines "products hazard" as follows:

" 'products hazard' includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others;"

7. In the exclusion section of the policy, under exclusion (f), it was recited that the policy does not apply:

"to property damage to the named insured's products arising out of such products or any part of such products;"

As defined in the insurance policy "property damage" means:

"(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;"

■ 8. Finally, the insurance policy defines "named insured's products" as follows:

"goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle), but 'named insured's products' shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold;"

One product may be made from many other products and still be the product of its immediate producer for products liability purposes. *U.S.F.G. v. American Insurance Co.*, No. 2–575A121 (2d District), Ind.App., 345 N.E.2d 267 (1976); *Aetna Insurance Co. v. Pete Wilson Roofing & Heating Co., Inc.*, 289 Ala. 719, 272 So.2d 232 (1972). Almost without exception, however, the cases in which courts have cited this general proposition have involved either a construction situation or a situation where the named insured is the manufacturer of the product itself rather than a party who was just a seller or dealer of a completed product in the position of Mobil Mart, Inc., in the present case. *Goodyear Rubber & Supply Co. v. Great American Insurance Co.*, 471 F.2d 1343 (9th Cir. 1973); *U.S.F.G. v. American Insurance Co., supra*; *Schweitz v. State Farm Fire & Casualty Co.*, 190 Neb. 400, 208 N.W.2d 664 (1973); *Aetna Insurance Co. v. Pete Wilson Roofing & Heating Co., Inc., supra.*

■ 9. Although, perhaps, the general weight of authority on similar cases is to the contrary, this court agrees with the reasoning of the court in *Pittsburg Bridge & Iron Works v. Liberty Mutual Insurance Co.*, 444 F.2d 1286 (3rd Cir. 1971), and *S. L. Rowland Construction Co. v. St. Paul Fire & Marine Co.*, 72 Wash.2d 682, 434 P.2d 725 (1967), in holding that an exclusion of the nature present in this case is ambiguous when applied to a fact situation such as the one here. As those courts pointed out, it is not clear whether the exclusion applies only to the part of the entity which caused the damage or to the entire entity (mobile home) itself which the insured sold. More specifically, the court finds an ambiguity between the definitions of "products hazard" and "named insured's products" as they are defined in the policy and exclusion (f) to said policy. Indeed, the facts in this particular case dictate this result when the court determines the intention of the parties from the terms of the insurance policy as they were reasonably understood by the insured. *Travelers Insurance Co. v. Highlands Insurance Co., supra.*

■ 10. Alternatively, the court finds that giving the policy and its specific provisions the construction which Cotton States would have the court place upon it would conflict with public policy and therefore may not be so construed. *Biebel Brothers, Inc. v. United States Fidelity & Guaranty Co.*, 522 F.2d 1207 (8th Cir. 1975). As Justice Carter stated in his dissenting opinion in *Volf v. Ocean Accident & Guarantee Corp.*, 50 Cal.2d 373, 325 P.2d 987 (1953):

"An insurance policy is to be construed most favorably to the insured, in such manner as to provide full coverage of the indicated risk rather than to narrow the protection. The courts will not sanction a construction of the insurer's language that will defeat the very purpose or object of the insurance. Normally a businessman who takes 'comprehensive' insurance with express coverage of 'products property damage' would expect his ordinary transactions to be covered. If the insurer would create an exception to the general import of the principal coverage clauses, the burden rests upon it to phrase that exception in clear and unmistakable language. If this is not done any ambiguity or uncertainty is resolved in favor of the policyholder. Indeed an exception must be couched in terms which are clear to the ordinary mind [and] any doubts as to the meaning will be resolved against the insurer. *In view of the foregoing rule defendant should not be permitted to exclude the very type of coverage desired by Plaintiffs by an exclusionary clause worded ambiguously and not called to their attention.*" (All citations omitted and emphasis added.) 325 P.2d at 991–992.

In his concurring opinion in *Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Co.*, 51 Cal.2d 558, 334 P.2d 881 (1959), Justice Carter stated further as follows:

"In my dissenting opinion in the *Volf* case I set forth in detail the reasons why the insurance policy there involved was ambiguous and why, under the decided cases, such ambiguity should be resolved in favor of the insured. I pointed out

508

that the primary function of insurance is to insure—to provide full coverage of the indicated risk. Businessmen are not usually lawyers and in the normal course of events must rely on the agents of insurance companies when buying insurance. If this court continues to 'interpret' patently ambiguous and inconsistent clauses in insurance policies to the detriment of the insured rather than resolving such ambiguities in his favor, the door will be open for still more ambiguities and even less insurance coverage for the money expended than is presently the case. It is my view that this court could and should, when such an ambiguous policy is before it, hold without equivocation that the provisions which are confusing and ambiguous as to the liability covered will be resolved in favor of the insured. If a few of such forthright decisions were rendered by this court in this field it would not be long before insurance policies were more clearly and understandably written to express the true intent of the parties and there would be less litigation involving insurance policies." 334 P.2d 881 at 886.

11. It is uncontested in this case that the bodily injury or property damage occurred away from premises owned by or rented to the named insured and after physical possession of such product had been relinquished. Therefore, the prerequisite conditions for coming within the "products hazard" definition in the policy have been met and coverage liability attaches unless it is properly excluded in some manner. As previously stated, it is the finding of this court that an ambiguity exists affecting the construction of the applicable exclusion provision in the policy and, consequently, that provision must be construed in the light most favorable to the insured. Construing it in that light, the exclusion applies only to that product within the mobile home which caused the fire, which in turn destroyed the entire mobile home.

12. Accordingly, the court concludes that Cotton States has the obligation and responsibility to indemnify the insured un-

der the policy in question against any damages because of bodily injury or property damage caused by the above referenced fire, with the exception of the value of the "product" within the mobile home which caused the fire. Further, Cotton States shall have the right and duty to defend Civil Action No. 6576J referred to hereinabove.